1

2

3

4

5

6

7                            UNITED STATES DISTRICT COURT

8                      FOR THE EASTERN DISTRICT OF CALIFORNIA

9

10   FRANK CLARK,                              No.  2:22-cv-01336 AC

11              Plaintiff,

12        v.                                   **ORDER**

13   KILOLO KIJAKAZI, Acting
     Commissioner of Social Security,
14
                Defendant.
15

16

17        Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security

18   ("Commissioner"), denying his application for disability insurance benefits ("DIB") under Title II

19   of the Social Security Act ("the Act"), 42 U.S.C. §§ 401-34.[1]  For the reasons that follow,

20   plaintiff's motion for summary judgment will be GRANTED, and defendant's cross-motion for

21   summary judgment will be DENIED.  The matter will be reversed and remanded to the

22   Commissioner for further proceedings.

23                            I.  PROCEDURAL BACKGROUND

24        Plaintiff applied for DIB on January 3, 2021.  Administrative Record ("AR") 215.[2]  The

25   disability onset date was alleged to be February 12, 2015.  Id.  The application was disapproved

26

27   [1]  DIB is paid to disabled persons who have contributed to the Disability Insurance Program, and
     who suffer from a mental or physical disability.  42 U.S.C. § 423(a)(1); Bowen v. City of New
28   York, 476 U.S. 467, 470 (1986).
     [2]  The AR is electronically filed at ECF No. 7-1 (AR 1 to AR 1062).

1   initially and on reconsideration.  AR 71-81, 94-97.  On January 26, 2022, ALJ Henry Kramzyk

2   presided over the hearing on plaintiff's challenge to the disapprovals.  AR 32 – 70 (transcript).

3   Plaintiff, who appeared with counsel David Shore, was present at the hearing.  AR 32, 34.  Pat

4   Green, a Vocational Expert ("VE"), also testified at the hearing.  AR 32.

5       On February 9, 2022, the ALJ found plaintiff "not disabled" under Sections 216(i) and

6   223(d) of Title II of the Act, 42 U.S.C. §§ 416(i), 423(d).  AR 15-28 (decision), 29-31 (exhibit

7   list).  On May 31, 2022, the Appeals Council denied plaintiff's request for review, leaving the

8   ALJ's decision as the final decision of the Commissioner of Social Security.  AR 1-5 (decision

9   and additional exhibit list).  Plaintiff filed this action on July 28, 2022.  ECF No. 1; see 42 U.S.C.

10  § 405(g).  The parties consented to the jurisdiction of the magistrate judge.  ECF No. 10.  The

11  parties' cross-motions for summary judgment, based upon the Administrative Record filed by the

12  Commissioner, have been fully briefed.  ECF Nos. 11 (plaintiff's summary judgment motion), 13

13  (Commissioner's summary judgment motion), 14 (plaintiff's reply).

14                  II.  FACTUAL BACKGROUND

15      Plaintiff was born in 1974, and accordingly was, at age 46, a younger person under the

16  regulations, when he filed his application.[3]  AR 215.  Plaintiff served in the military from June of

17  1993 through November of 2015 as a Gunnery Sergeant in the United States Marine Corps; he

18  has no other work history in the 15 years prior to his application.  AR 243.  Plaintiff has a high

19  school education, and can communicate in English.  AR 241, 243.  Plaintiff was in a dirt bike

20  accident in January of 2015, resulting in a neck injury that required two surgeries.  AR 332-33,

21  336.

22                  III.  LEGAL STANDARDS

23      The Commissioner's decision that a claimant is not disabled will be upheld "if it is

24  supported by substantial evidence and if the Commissioner applied the correct legal standards."

25  Howard ex rel. Wolff v. Barnhart, 341 F.3d 1006, 1011 (9th Cir. 2003).  "'The findings of the

26  Secretary as to any fact, if supported by substantial evidence, shall be conclusive . . ..'"  Andrews

27  v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995) (quoting 42 U.S.C. § 405(g)).

28  _____
    [3]  See 20 C.F.R. § 404.1563(c) ("younger person").

                  2

Substantial evidence is "more than a mere scintilla," but "may be less than a preponderance."  Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012).  "It means such evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971) (internal quotation marks omitted).  "While inferences from the record can constitute substantial evidence, only those 'reasonably drawn from the record' will suffice."  Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006) (citation omitted).  Although this court cannot substitute its discretion for that of the Commissioner, the court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion."  Desrosiers v. Secretary of HHS, 846 F.2d 573, 576 (9th Cir. 1988); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985) ("The court must consider both evidence that supports and evidence that detracts from the ALJ's conclusion; it may not affirm simply by isolating a specific quantum of supporting evidence.").

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities."  Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001).  "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld."  Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002).  However, the court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely."  Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007); Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003) ("It was error for the district court to affirm the ALJ's credibility decision based on evidence that the ALJ did not discuss").

The court will not reverse the Commissioner's decision if it is based on harmless error, which exists only when it is "clear from the record that an ALJ's error was 'inconsequential to the ultimate nondisability determination.'"  Robbins v. Soc. Sec. Admin., 466 F.3d 880, 885 (9th Cir. 2006) (quoting Stout v. Commissioner, 454 F.3d 1050, 1055 (9th Cir. 2006)); see also Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).

## IV.  RELEVANT LAW

Disability Insurance Benefits and Supplemental Security Income are available for every

eligible individual who is "disabled."  42 U.S.C. §§ 402(d)(1)(B)(ii) (DIB), 1381a (SSI).  Plaintiff is "disabled" if she is "'unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment . . ..'"  Bowen v. Yuckert, 482 U.S. 137, 140 (1987) (quoting identically worded provisions of 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A)).

The Commissioner uses a five-step sequential evaluation process to determine whether an applicant is disabled and entitled to benefits.  20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); Barnhart v. Thomas, 540 U.S. 20, 24-25 (2003) (setting forth the "five-step sequential evaluation process to determine disability" under Title II and Title XVI.  The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity?  If so, the claimant is not disabled.  If not, proceed to step two.

20 C.F.R. § 404.1520(a)(4)(i), (b).

> Step two: Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, the claimant is not disabled.

Id. §§ 404.1520(a)(4)(ii), (c).

> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1?  If so, the claimant is disabled.  If not, proceed to step four.

Id. §§ 404.1520(a)(4)(iii), (d).

> Step four: Does the claimant's residual functional capacity make him capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.

Id. §§ 404.1520(a)(4)(iv), (e), (f).

> Step five: Does the claimant have the residual functional capacity perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Id. §§ 404.1520(a)(4)(v), (g).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process.  20 C.F.R. §§ 404.1512(a) ("In general, you have to prove to us that you are blind or disabled"), 416.912(a) (same); Bowen, 482 U.S. at 146 n.5.  However, "[a]t the fifth step of the sequential analysis, the burden shifts to the Commissioner to demonstrate that the claimant is not

disabled and can engage in work that exists in significant numbers in the national economy." <u>Hill</u> <u>v. Astrue</u>, 698 F.3d 1153, 1161 (9th Cir. 2012); <u>Bowen</u>, 482 U.S. at 146 n.5.

## V.  THE ALJ's DECISION

The ALJ made the following findings:

> 1. The claimant last met the insured status requirements of the Social Security Act on December 31, 2020.  (Ex. 9D)

> 2. [Step 1] The claimant did not engage in substantial gainful activity from the alleged onset date (February 12, 2015) through the date last insured (December 31, 2020). 20 CFR 404.1571 *et seq.*

> 3. [Step 2] Through the date last insured, the claimant had the following severe impairments: obesity; complex C1 Jefferson fracture; status post occipital cervical fusion at the C2-C3 level of the cervical spine; mild degenerative changes from C4-C5 through C6-C7; and mild to moderate degenerative changes in the lumbar spine. 20 CFR 404.1520(c); SSR 85-28; SSR 19-2p.

> 4. [Step 3] Through the date last insured, the claimant's impairment did not meet or medically equal the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 – even in combination. 20 CFR 404.1520(d); 20 CFR 404.1525; 20 CFR 404.1526

> 5. [Residual Functional Capacity ("RFC")]  After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity (RFC) to lift, carry, push, pull up to 20 pounds occasionally and 10 pounds frequently; sit for a total of up to 6 hours a day; and stand and/or walk for a total of up to 6 hours a day. 20 CFR 404.1567(b) ("Light work"). He was never able to climb ladders, ropes, or scaffolds, but occasionally climb ramps and stairs. He could occasionally balance, stoop, crouch, and kneel, but never crawl. He was able to do work that required only occasional twisting of the neck. He needed to avoid concentrated exposure to extreme cold. He needed to avoid all exposure to vibration. He needed to avoid all exposure to hazards such as dangerous machinery and unprotected heights.

> 6.  [Step 4] The claimant was unable to perform his past relevant work (20 CFR 404.1565).

> 7.  [Step 5] Born on [in 1974], the claimant was 46 years old (a younger individual age 18-49) on the date last insured. See 20 CFR 404.1563.

> 8.  [Step 5, continued] The claimant has at least a high school education. (20 CFR 404.1564).

> 9.  [Step 5, continued] Transferability of job skills is not material to the determination of disability because using the Medical-Vocational

1    Rules as a framework supports a finding that the claimant is "not
2    disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

3    10. [Step 5, continued] Through the date last insured, considering the
4    claimant's age, education, work experience, and residual functional capacity, there were other jobs that existed in significant numbers in the national economy that the claimant could have performed. See 20
5    CFR 404.1569; 20 CFR 404.1569a.

6    11.  The claimant was not under a disability, as defined in the Social
7    Security Act, at any time from the alleged onset date (February 12, 2015) through the date last insured (December 31, 2020). See 20 CFR 404.1520(g).

8

9    AR 17-28.  As noted, the ALJ concluded that plaintiff was "not disabled" under Title II of the

10   Act.  AR 28.

11                                VI.  ANALYSIS

12        Plaintiff alleges that the ALJ erred in three ways: (1) by issuing an RFC that is not

13   supported by the medical opinions and that is ambiguous; (2) by failing to order a consultative

14   examination or call a medical expert to develop the record; and (3) by improperly rejecting

15   plaintiff's subjective testimony.

16        A.  The RFC is Inadequately Supported and Ambiguous, Requiring Remand

17        Plaintiff argues that the RFC is not properly supported because the evidence in the record

18   does not support "occasional twisting" of the neck, and the term "twist" is ambiguous and not

19   defined.  ECF No. 11 at 16-19.  To determine a plaintiff's RFC, the ALJ must resolve conflicts in

20   the medical testimony and translate the plaintiff's impairments into concrete functional

21   limitations.  See Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1174-75 (9th Cir. 2008) (affirming

22   the ALJ's translation of moderate functional limitations into the plaintiff's RFC).  However, it is

23   established law that an ALJ may not render their own medical opinion and is not empowered to

24   independently assess clinical findings.  See, e.g., Tackett v. Apfel, 180 F.3d 1094, 1102–03 (9th

25   Cir. 1999) (holding an ALJ erred in rejecting physicians' opinions and rendering his own medical

26   opinion); Banks v. Barnhart, 434 F. Supp. 2d 800, 805 (C.D. Cal. 2006) ("An ALJ cannot

27   arbitrarily substitute his own judgment for competent medical opinion, and he must not succumb

28   to the temptation to play doctor and make his own independent medical findings"); Nguyen v.

                                        6

1   Chater, 172 F.3d 31, 35 (1st Cir. 1999) (as a lay person, the ALJ is "simply not qualified to

2   interpret raw medical data in functional terms"); Miller v. Astrue, 695 F. Supp. 2d 1042, 1048

3   (C.D. Cal. 2010) (reasoning that it is improper for the ALJ to act as the medical expert); Padilla v.

4   Astrue, 541 F. Supp. 2d 1102, 1106 (C.D. Cal. 2008) (opining that an ALJ is not qualified to

5   extrapolate functional limitations from raw medical data).

6       Here, in relevant part, the ALJ found plaintiff "was able to do work that required only

7   occasional twisting of the neck." AR 21.  To support this limitation, the ALJ noted that following

8   his dirt bike accident, plaintiff's "movement of his neck and lumbar spine was severely limited (5

9   degrees flexion and extension and 0 degrees lateral bending in his neck; 20 degrees flexion in his

10   lower back) on March 19, 2015," but by "April 10, 2015, he was feeling less pain; he was

11   'working a desk' for 'a few hrs;' and he was 'getting more motion of the neck.'" AR 23.  The

12   ALJ reasoned that plaintiff's neck was more mobile than plaintiff alleged based on plaintiff's

13   daily activities, including playing with his dog, taking walks with his son, shaving daily, and

14   doing yardwork.  AR 24.  The ALJ noted that at a chiropractor appointment in 2015, plaintiff was

15   not wearing a neck brace.  Id.  The ALJ concluded, without citation, that "[t]he activities reported

16   in 2015 and 2016, provided evidence of an ability to do light work with only occasional twisting

17   of the neck." AR 25.

18       The ALJ's RFC with respect to the neck limitation is not sufficiently supported; the ALJ

19   made his own medical determination largely based on an assessment of plaintiff's daily activities

20   and limited notes in the record.  There is no medical opinion regarding the range of motion in

21   plaintiff's neck, and the evidence that the ALJ references does not clearly support the assessed

22   limitation.  For example, a notation that plaintiff had "more range of motion" in the neck, does

23   not clearly translate into the limitation of "occasional twisting" ascribed in the RFC.  This portion

24   of the RFC is not supported by substantial evidence.  To the extent substantial evidence was not

25   available in the record, the ALJ had a duty to further develop the record.  Tonapetyan v. Halter,

26   242 F.3d 1144, 1150 (9th Cir. 2001).

27       The court also agrees that the term "twisting" as used in the RFC is ambiguous; it is not a

28   vocational term contained in the Commissioner's regulations or rulings and the ALJ did not

1    define the term.  The term does not appear in the medical record and is not defined in the record.

2    The Commissioner's argument that the term is not ambiguous because the vocational expert

3    found certain occupations could be performed with an "occasional twisting" limitation is not

4    convincing; neither the ALJ nor the Vocational Expert defined "twisting" and the term could be

5    interpreted to include a variety of motions.  Without more, the use of the term is vague.  The ALJ

6    erred in formulating the RFC.

7          B.  The ALJ Properly Rejected Plaintiff's Subjective Testimony

8          The ALJ properly rejected plaintiff's subjective testimony regarding his pain and

9    impairments because the ALJ pointed to evidence directly contradicting plaintiff's statements.

10   Evaluating the credibility of a plaintiff's subjective testimony is a two-step process.  First, the

11   ALJ must "determine whether the claimant has presented objective medical evidence of an

12   underlying impairment which could reasonably be expected to produce the pain or other

13   symptoms alleged. . . .  In this analysis, the claimant is not required to show that her impairment

14   could reasonably be expected to cause the severity of the symptom she has alleged; she need only

15   show that it could reasonably have caused some degree of the symptom."  Garrison v. Colvin, 759

16   F.3d 995, 1014 (9th Cir. 2014) (internal citations omitted).  Objective medical evidence of the

17   pain or fatigue itself is not required.  Id. (internal citations omitted).  Second, if the ALJ does not

18   find evidence of malingering, the ALJ may only reject the claimant's testimony by offering

19   "specific, clear and convincing reasons for doing so."  Id. (internal citations omitted).  "In

20   weighing a claimant's credibility, the ALJ may consider his reputation for truthfulness,

21   inconsistencies either in his testimony or between his testimony and his conduct, his daily

22   activities, his work record, and testimony from physicians and third parties concerning the nature,

23   severity, and effect of the symptoms of which he complains."  Light v. Soc. Sec. Admin., 119

24   F.3d 789, 792 (9th Cir. 1997), as amended on reh'g (Sept. 17, 1997).  An ALJ can properly reject

25   subjective testimony by using "ordinary techniques of credibility evaluation' and providing a

26   specific, clear and convincing reason, supported by the record, that [plaintiff's] testimony was

27   generally not credible.  Thomas v. Barnhart, 278 F.3d 947, 960 (9th Cir. 2002)

28   ////

Here, the ALJ pointed to specific instances in which the evidence directly contradicted plaintiff's testimony.  Plaintiff testified he was unable to lift "anything" from February of 2015; did not take a trip anywhere; could only eat solid foods while sitting in a recliner; had headaches and dizziness from trying to read; and could not walk on his own until 2018.  AR 21-22; see AR 53-59.  The ALJ acknowledged that plaintiff had a severe neck injury, that his presentation "in the early part of his rehabilitation was concerning" (AR 23), and that there was evidence of severely limited range of motion in March 2015 (AR 23; see AR 825-26).  However, the ALJ noted that the condition had improved significantly (even if it did not return to normal) (AR 24; see AR 1014), and that plaintiff had normal or full (5/5) strength throughout this period (AR 23; see, e.g., AR 656-57, 814).  Further, medical records state that plaintiff was walking up to 2 hours each day between April and August of 2015.  AR 612.  Since "[c]ontradiction with the medical evidence is a sufficient basis for rejecting the claimant's subjective testimony," the inconsistencies between subjective testimony and the medical evidence were sufficient to reject his claims.  Smartt v. Kijakazi, 53 F.4th 489, 499 (9th Cir. 2022).

The inconstancies in plaintiff's testimony extended beyond conflict with the medical record to factual contradictions that call into question plaintiff's credibility.  For example, plaintiff said he could not take a trip anywhere, but the record shows he flew and traveled several times.  AR 23-24; see, e.g., AR 529 (medical record from December of 2015 stating "He is currently in Missouri on a Holiday Vacation"), 601 (medical record from August 2015 stating appointment could not be rescheduled because plaintiff will be out of town for ten days), 612 (medical record from August 2015 noting plaintiff experienced pain "following a bumpy airplane flight"), 995-96 (medical note from 2016 referencing a trip to Oregon).  As the ALJ observed, this evidence directly "contradicts [plaintiff's] testimony regarding the taking of no trips or vacations."  AR 23.  Plaintiff claimed that he could not lift "anything" between February 2015 and December 31, 2020 (AR 52-53), but in 2016 he was working out a gym four times a week and lifting weight free weights "including overhead."  AR 23; see AR 1013.  He was walking on his own throughout 2015, sometimes up to 3.5 miles at a time.  AR 23; see AR 589, 644, 727.  Again, as the ALJ pointed out, this evidence directly contradicts Plaintiff's testimony "that the

9

lifting of 'any' weight was impossible for him before" December 31, 2020, and "that '2018' was when he was finally able to walk 'on [his] own.'"  AR 23.  Because these inconsistencies between plaintiff's testimony and the record call into question plaintiff's credibility, and the ALJ properly referenced them as specific, clear, and convincing reasons to discredit plaintiff.  AR 23-26. The ALJ did not err in evaluating plaintiff's testimony.

C.  Remand

The undersigned agrees with plaintiff that the ALJ's error with respect to the RFC determination is harmful and remand for further proceedings by the Commissioner is necessary. An error is harmful when it has some consequence on the ultimate non-disability determination. Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1055 (9th Cir. 2006).  The ALJ's error in this matter was harmful; a properly supported RFC may very well result in a more restrictive residual functional capacity assessment, which may in turn alter the finding of non-disability.

It is for the ALJ to determine in the first instance whether plaintiff has severe impairments and, ultimately, whether she is disabled under the Act.  See Marsh v. Colvin, 792 F.3d 1170, 1173 (9th Cir. 2015) ("the decision on disability rests with the ALJ and the Commissioner of the Social Security Administration in the first instance, not with a district court").  "Remand for further administrative proceedings is appropriate if enhancement of the record would be useful." Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004).  Here, the ALJ failed to properly support the RFC with respect to the assigned neck-twisting limitation.  Further development of the record consistent with this order is necessary, and remand for further proceedings is the appropriate remedy.

VII.  CONCLUSION

For the reasons set forth above, IT IS HEREBY ORDERED that:

1.  Plaintiff's motion for summary judgment (ECF No. 11), is GRANTED;

2.  The Commissioner's cross-motion for summary judgment (ECF No. 13), is DENIED;

3.  This matter is REMANDED to the Commissioner for further consideration consistent with this order; and

////

4. The Clerk of the Court shall enter judgment for plaintiff, and close this case.

DATED: September 14, 2023

ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE